Dore, J.
At the close of the evidence on both sides after trial before the court and a jury, the court directed a verdict in defendant’s favor on its counterclaim in the sum of $17,968.59 and judgment was entered thereon with costs in the sum of $18,562.67. Plaintiff appeals.
As the case was tried before the court and a jury, if there were any issues of fact surviving the court should have submitted them to the jury and not disposed of them as matters of law.
Resolution of the issues on this record essentially depended upon the credibility of witnesses and on inferences to be drawn from facts that were within the province of the jury to determine. On the facts disclosed, the court should not have decided as a matter of law that there was a bona fide dispute which justified the so-called “ charge back ” by defendant. Surviving the conflicting and contradictory evidence were issues of fact including the salient issue as to whether at the time the hills became due there was in fact a bona fide dispute unadjusted that would give defendant under the terms of the factoring contract the right to charge hack to plaintiff the account involved.'
The basic transaction was a sale of textiles by plaintiff, seller, to a corporation, Junior Center, Inc., the buyer, controlled by the witness Sigmund L. Vorzimer and his brother; defendant acted as factor. Under the factoring agreement defendant assumed liability for the buyer’s financial inability to pay but the seller was to advise the factor of all disputes and if any dispute remained unadjusted “ at the time the bill becomes due ” the factor could charge back to the seller the account or accounts involved. The sale in question was net ten days, originally by its terms, but thereafter the factor gave the buyer an additional sixty days, charging additional interest *361 and also procuring from the Vorzimer brothers a personal guarantee by them of the account.
Concededly, there originally was a dispute with regard to the quality of the goods sold but plaintiff offered proof to show that after long negotiations a settlement of that dispute was made by an exchange of letters, dated February 7,1947, between the attorney for the buyer and the attorneys for the seller. Under the terms of the settlement plaintiff, the seller, took back 881 yards of the goods and agreed to charge only fifty-eight cents per yard instead of the higher price originally agreed upon. As a part of that settlement the seller was obliged to deliver to the buyer a general release executed by one Kaufax whose connection with the sale is the only basis for any claim of violation of Office of Price Administration law and regulations. On this trial Vorzimer as a witness for defendánt swore that Ms attorney had no authority to make the settlement or write the letter confirming it and that neither he nor Ms brother knew anything about it. The attorney, however, testified that the settlement was dictated in the presence of both Vorzimers and the witness Vorzimer admitted that after February 10, 1947, the credit reducing the original charge for the goods from $36,956.47 to $29,315.77 involving a net credit of over $6,000 was posted in the buyer’s books.
Before tMs trial Shemitz, the attorney, had sued Ms former client, the buyer, in the City Court for services inter alia in procuring the very settlement in question and had recovered a judgment after trial before the City Court and a jury for $1,250 against Junior Center, Inc., had issued execution for the judgment unsatisfied and had collected only by sale of a part of the goods in question.
Obviously the trial court thought Vorzimer’s testimony incredible as a matter of law because in the decision made from the bench at the close of the evidence, the court held that every dispute regarding the condition of the goods had been finally adjusted and settled on February 7, 1947, and that Shemitz had undoubtedly acted on behalf of and at the instance of the buyer, Junior Center, Inc.
However, as to a second alleged dispute, namely, a claimed evasion of the O.P.A. regulations, the court held as a matter of law that there did exist a “ real ” dispute wMch remains unadjusted between the parties within the meaning of the factoring agreement and accordingly directed judgment for defendant.
*362 In our opinion the issues were issues of fact for the jury including the issue whether the alleged O.P.A. dispute was settled by the formal settlement of February 7,1947. Inasmuch as Kaufax’s connection with the sale was the only basis upon which an O.P.A. claim could be made, there was testimony which if believed might resolve that issue in plaintiff’s favor.
The Vorzimers, to escape personal liability on their guarantee, had a strong motive to assist the factor in collecting from this plaintiff, the seller; and in view of the relative likelihood of collection of any judgment, plaintiff claimed the factor had a motive to charge back against plaintiff rather than attempt to recover against the buyer whose corporation stopped operating in March or April, 1947, and “ started to liquidate ” the business, or on the guarantee of its officers, which might not prove sufficient.
There was testimony, which if believed by the jury, indicated that in March or early April, 1948, representatives of defendant had said that the buyer was on the verge of bankruptcy and the factor could not collect its money and had to look “ for some way to protect our interests.” There was also testimony that Vorzimer had visited a representative of defendant a few days before the buyer’s suit against the seller was started. In testimony taken in a prior action Vorzimer had testified that he at first decided the agreement was illegal after conversation with the factor. The complaint in this case by the seller against the factor and the complaint in the other case by the buyer against the seller were both served on the same day, May 9,1948.
Plaintiff claimed the buyer was financially unable to meet its obligations, that all differences had been settled by the settlement agreement of February 7, 1947, and plaintiff also contended that the buyer’s claim was inspired by defendant.
The date when the bills became due was important and was an issue of fact for the jury since it is only disputes “ unadjusted at the time the bill becomes due ” that'justify the factor in charging back to the seller the accounts involved.
The judgment appealed from should be reversed and a new trial ordered, with costs to the appellant to abide the event.
Peck, P. J., Callahan and Van Voobhis, JJ., concur; Glen-non, J., dissents and votes to affirm.
Judgment reversed and a new trial ordered, with costs to the appellant to abide the event.